[Cite as *Cutler v. Saran*, 2016-Ohio-7584.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CUTLER REAL ESTATE CO. | C.A. No. 28122 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MANDEEP SARAN, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellants | CASE No. CV 2015 02 0672 |

DECISION AND JOURNAL ENTRY

Dated: November 2, 2016

SCHAFER, Judge.

**{¶1}** Defendants-Appellants, Mandeep Saran and Akhtiar Saran ("the Sarans") appeal the judgment of the Summit County Court of Common Pleas granting summary judgment to Plaintiff-Appellee, Cutler Real Estate. We affirm.

I.

**{¶2}** On or about April 25, 2008, Cutler Commercial Investment Group ("Cutler") and Akhtiar Saran, signing on behalf of his wife, Mandeep Saran,[1] executed a Commercial/Industrial Listing Contract ("Listing Agreement"). The Listing Agreement included a clause which provided that a commission would be due to Cutler in the event it procured a Purchaser or Tenant. Thereafter, Mandeep Saran and George Albanna, a tenant procured by Cutler, executed a Lease of Commercial Building ("Lease"). The Lease provided for a one year tenancy, with a

---

[1] The title to the subject property was transferred to Mandeep Saran prior the execution of the Listing Agreement for business purposes. Whether Akhtiar Saran had permission to enter into the Listing Agreement on his wife's behalf is not at issue in this case.

renewal option and a right of first refusal held by Albanna. Pursuant to the Listing Agreement, Mandeep Saran paid an invoice for the commission on the first year of the Lease.

{¶3} Prior to the termination of the one year tenancy, Albanna exercised his option to renew the Lease and requested an additional three year option. Cutler was not involved in the lease renewals and the Sarans did not pay Cutler a commission after the first year of the Lease. Albanna continued his tenancy until October 2014. At that time, the subject property was sold to Unsurpassed Holdings, LLC, with George Albanna as the signing member. No commission was paid to Cutler.

{¶4} Subsequently, Cutler filed a Complaint against the Sarans for breach of contract and money damages, asserting it was due a commission upon the respective lease renewals and the sale of the subject property. After discovery was complete, Cutler filed a motion for summary judgment, to which the Sarans responded in opposition, and Cutler replied in support of its motion. Finding no issues of material fact, the trial court granted summary judgment in favor of Cutler in the amount of $26,244.00, with prejudgment interest at the statutory rate from November 24, 2016.

{¶5} The Sarans filed this timely appeal and raise one assignment of error for our review.

II.

**The trial court erred when it entered summary judgment in favor of Cutler Real Estate since Defendants, Mandeep Saran and Akhtiar Saran, did not breach their contract with Cutler Real Estate.**

{¶6} In their only assignment of error, the Sarans argue the trial court erred in granting Cutler's motion for summary judgment. We disagree.

{¶7} Under Civ.R. 56(C), summary judgment is appropriate when:

(1)[no] genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The movant bears the initial burden of demonstrating the absence of genuine issues of material fact concerning the essential elements of the nonmoving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party satisfies this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293. A review of a trial court's grant of summary judgment is considered de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Accordingly, we apply the same standard as the trial court, viewing the facts in the light most favorable to the non-moving party and resolving any doubt in the favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). As the facts in this case are not in dispute, we resolve the matter by applying existing law. Our analysis is expressly limited to the specific facts of this case and the narrow issue on appeal.

{¶8} In order to prove a breach of contract, Cutler must demonstrate the existence of a binding contract, that Cutler, as the non-breaching party, performed its contractual obligations, that the Sarans failed to fulfill their contractual obligations without legal excuse, and that Cutler suffered damages as a result of the breach. *Bender Devp. Co. v. Streza*, 9th Dist. Lorain No.03CA008397, 2004-Ohio-4576, ¶ 10. In this case, Cutler alleged the Sarans breached the Listing Agreement by not paying the commissions due under the agreement. In its motion for summary judgment, Cutler argued there was no dispute that the parties had executed the agreement, no dispute Cutler had procured Albanna, and no dispute that Albanna had maintained his tenancy until purchasing the subject property in 2014. Therefore, under the Listing

Agreement, Cutler was due a commission on the lease renewals and the sale of the subject property. In response, the Sarans argued that there were issues of material fact and by paying a commission on the first year of the Lease, they had fully complied with the Listing Agreement since the term of the Listing Agreement had expired and Cutler was not involved in the later lease renewals or subsequent sale. In reply to the Sarans' response, Cutler argued that the plain language of the terms of the Listing Agreement, and not the Sarans' understanding of the terms of the Listing Agreement was controlling.

{¶9} The trial court found that Cutler had established each element of its breach of contract claim and, therefore, it was entitled to summary judgment as a matter of law. Specifically, the trial court found that (1) it was undisputed that a written contract existed between the parties and pursuant to the unambiguous terms, Cutler would be due a six percent commission on the gross aggregate rent on the underlying lease and any holdovers regardless of a change in terms; (2) it was undisputed that Albanna signed a lease and was a holdover until the subject property was sold and, therefore, Cutler was due the contractual six percent commission rate for the time period Albanna maintained continuous possession; and (3) that it was undisputed that Albanna ultimately purchased the subject property through his LLC and that Cutler had procured Albanna as a purchaser and was entitled to a commission under paragraph 12(A) of the Listing Agreement. As the trial court found no genuine issues of material fact remained as to the existence of the Listing Agreement, Cutler's performance under the agreement, the Saran's breach of the agreement, and the damages incurred by Cutler, it granted Cutler's motion for summary judgment and entered judgment in favor of Cutler.

{¶10} On appeal, the Sarans argue the trial court erred when it found there were no genuine issues of material fact since the lease extensions and the ultimate sale of the property

occurred outside the term of the original agency agreement and without the involvement of Cutler. However, where a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact to be determined. *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). In this case, the original term in the Listing Agreement was from "6:00 p.m. Summit County, Ohio Time on April 25, 2008 until 6:00 p.m. Summit County, Ohio Time on November 30, 2008," and included a protection period of 180 days after the expiration of the term of the Listing Agreement if a purchase, trade, exchange or lease was executed without the agency or a broker to any person to whom the agency or broker had offered the same. The Sarans contend that in order for Cutler to be owed a commission on a renewal of the Lease or the sale of the property, those agreements must have been executed on or before the termination of the 180 day protection period on May 30, 2009, and since this did not occur, Cutler is not owed a commission.

{¶11} Generally, "a real estate broker earns his commission when he procures a buyer who is ready, willing, and able to purchase the subject property on terms specified by the owner." *Rudy v. Carter*, 8th Dist. Cuyahoga No. 92247, 2009-Ohio-2729, ¶ 21. "A broker is the procuring cause of a sale where his actions directly cause or originate a series of events which, without interruption, directly result in the production of a buyer ready, willing and able to purchase the real estate." *Geyer Associates Realty, Inc. v. Eschtruth*, 9th Dist. Lorain No. 91CA005133, 1992 WL 64176, *2 (March 25, 1992), citing *Bauman v. Worley*, 166 Ohio St. 471 (1957), paragraph two of the syllabus. However, a broker may not recover where the broker fails to find a buyer ready, willing and able to buy within the time limits contracted for, unless new services were rendered after the termination of the agreement. *Geyer Associates Realty, Inc.* at

*3, citing *Dickson v. Union Central Life Insurance Company*, 1st Dist. Hamilton No. 2956, 1927 WL 2578, *1 (Mar. 7, 1927).

> **{¶12}** Paragraph 12(B) of the Listing Agreement states:
>
> At the time of execution of an agreement to lease the Real Estate during the term of this Contract, Owner agrees to pay REALTOR a commission of six % of the gross aggregate rent, *options, renewals and informal holdovers*, including change in terms renegotiated, if any, payable when a binding lease, option or renewal, have been executed, or a time of holdover.

(Emphasis added). The construction of contracts is a matter of law and "common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, paragraphs one and two of the syllabus. Accordingly, under the Listing Agreement, the Sarans agreed to pay Cutler a six percent commission on any *renewal, option or informal holdover* of a Lease which was signed during the term of the Listing Agreement. It is undisputed that Cutler procured Albanna as a tenant and that the original Lease between Mandeep Saran and Albanna was executed on July 1, 2008, during the term of the Listing Agreement. It is also undisputed that Albanna maintained uninterrupted possession of the subject property with the consent of the Sarans until it was sold. The record is not clear whether Albanna maintained possession of the subject property through lease renewals or as a holdover tenant, but such a determination is not necessary as the Sarans agreed to pay the commission upon any options, renewals, or informal holdovers. Therefore, the trial court was correct in determining there were no genuine issues of material fact and that the Sarans had breached the Listing Agreement by not paying Cutler its commission for the extent of Albanna's tenancy.

**{¶13}** Additionally, the Listing Agreement has an extension clause which states that "[i]f a contract to purchase, trade, exchange or lease is signed before this Contract expires, *the term hereof shall continue until final disposition of the Contract to purchase, trade exchange, or lease*." (Emphasis added). Such an extension clause is enforceable and subject to the same rules of construction as are other written contracts. *Heysek Realty, Inc. v. Thomas*, 9th Dist. Medina No. 1155, 1982 WL 2829, *2 (Nov. 10, 1982) citing *King v. Dean*, 19 Ohio St.2d 17 (1969). As stated above, there is no dispute that the original Lease between Mandeep Saran and Albanna was executed during the term of the Listing Agreement. The term of the original Lease would have expired at noon on July 31, 2009. However, on or about July 29, 2009, Mandeep Saran and Albanna executed a Lease of Commercial Building Lease Renewal, wherein Albanna exercised his option to extend the Lease and requested an additional three year renewal option. Again, it is undisputed that Albanna maintained uninterrupted possession of the subject property until it was purchased by Unsurpassed Holdings, LLC in October 2014. Therefore, the final disposition of the Lease did not occur until the subject property was sold and the term of the Listing Agreement continued, pursuant to the extension clause, until the sale of the property.

**{¶14}** Paragraph 12(A) of the Listing Agreement states:

12. A. REALTOR'S FEE: In consideration of REALTOR'S efforts and services to procure a Purchaser/Tenant for the Real Estate, Owner agrees to pay REALTOR at CLOSING a commission of six % of the purchase price, trade of exchange value, for which the Real Estate may be offered for sale or exchanged by REALTOR. The commission shall be deemed earned when a binding contract for sale or exchange has been executed and/or when REALTOR has produced a Purchaser, ready, willing and able to buy the REAL ESTATE pursuant to the terms of the Contract.

As noted earlier, there is no dispute that Cutler procured Albanna as a tenant or that Albanna purchased the subject property through his LLC. Therefore, pursuant to Paragraphs 12(A) and

the extension clause, the Sarans agreed to pay Cutler a commission of six percent of the purchase price of the subject property.

{¶15} In conclusion, construing the evidence most strongly in favor of the Sarans, we find that there were no genuine issues of material fact left to be resolved and that Cutler's motion for summary judgment was properly granted. As we stated above, our analysis is limited to the specific facts in this case and the narrow issue on appeal.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

GARY T. MANTKOWSKI, Attorney at Law, for Appellants.

JAMES J. COLLUM, Attorney at Law, for Appellee.

ROBERT P. CAMPBELL, Attorney at Law, for Appellee.