420

ESTATE OF LESTER O. STEARNS, DECEASED, INEZ STEARNS, ADMINIS-
TRATRIX AND INEZ STEARNS, SURVIVING WIFE, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21345. Promulgated March 16, 1950.

*John J. Flynn, Esq.*, for the petitioner.
*Robert N. Willan, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: The respondent having conceded that he erred in imposing a penalty of $247.75 for underestimation of estimated tax for the year 1945, we have but one issue left for our determination. That issue may be stated as follows:

Was a net amount of $10,000 received by Stearns in 1945 in settlement of his suit for breach of an employment contract and of all his claims arising under said contract "back pay" within the meaning of section 107 (d) of the Internal Revenue Code?

There is no real dispute between the parties as to the facts and we have endeavored to give full details of these facts in our findings

above. The differences between the parties arise because of their differences as to the applicable law when applied to the facts which are present here. The applicable statute is section 107 (d) of the Internal Revenue Code, printed in the margin.[1]

Treasury Regulations 111, section 29.107–3, which deals with "back pay attributable to prior taxable years," is in substantially the same language as the statute itself and no useful purpose would be served in printing it here. It will be observed that a reading of section 107 (d) (2), defining "back pay," discloses the following:

* * * remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for *services performed* prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events: * * * [Emphasis supplied.]

Decedent Stearns had been employed for several years by Columbia as its sales manager and in the latter years of his employment received $1,000 per month as salary. On March 16, 1943, the board of directors of Columbia adopted a resolution canceling and terminating his employment as of May 31, 1943. Stearns was paid his salary to that date and none of that salary is involved here. Columbia refused to pay him after that date, and Stearns sued Columbia for breach of contract and for damages. This suit was settled by compromise on December 21, 1945, and Stearns was paid $15,000 in full settlement of his claim. Can it be said that this $15,000, or any part thereof, was back pay "for services performed prior to the taxable year for his employer" within the meaning of the applicable statute? We do not think it can be so held.

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

* * * * * * *

(d) BACK PAY.—

(1) IN GENERAL.—If the amount of the back pay received or accrued by an individual during the taxable year exceeds 15 per centum of the gross income of the individual for such year, the part of the tax attributable to the inclusion of such back pay in gross income for the taxable year shall not be greater than the aggregate of the increases in the taxes which would have resulted from the inclusion of the respective portions of such back pay in gross income for the taxable years to which such portions are respectively attributable, as determined under the regulations prescribed by the Commissioner with the approval of the Secretary.

(2) DEFINITION OF BACK PAY.—For the purposes of this subsection, "back pay" means (A) remuneration, including wages, salaries, retirement pay, and other similar compensation, which is received or accrued during the taxable year by an employee for services performed prior to the taxable year for his employer and which would have been paid prior to the taxable year except for the intervention of one of the following events: (i) bankruptcy or receivership of the employer; (ii) dispute as to the liability of the employer to pay such remuneration, which is determined after the commencement of court proceedings; (iii) if the employer is the United States, a State, a Territory, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any of the foregoing, lack of funds appropriated to pay such remuneration; or (iv) any other event determined to be similar in nature under regulations prescribed by the Commissioner with the approval of the Secretary; * * *

In the release and acquittance which Stearns signed when he settled with Columbia he agreed, among other things, that the payment of $15,000 was:

* * * full payment and satisfaction of any and all damages suffered by me on account of the breach (as alleged by me but denied by Columbia Radiator Company) of a certain contract of employment between us dated October 19, 1939 and on account of which an action was brought by me against Columbia Radiator Company * * *; also included, but not by way of limitation of the above, is the full and complete release and discharge from any and all right therein, and/or otherwise, given to me to be employed by Columbia Radiator Company; the right therein, and/or otherwise, given to me to be elected an officer of said Company; the right therein, and/or otherwise, given to me to purchase certain shares of the capital stock of said Company at certain prices, terms, times and conditions; and the right therein, and/or otherwise, given to me to receive payment of certain cash or other sums for services as an employee and/or officer of said Company.

In *Norbert J. Kenny*, 4 T. C. 750, we gave some of the legislative history of section 107 (d). In that connection we said:

The reports of the Congressional committees show that the committees were concerned with the problem of how far the scope of the definition of "back pay" should extend. The definition first proposed was too limited and was rejected by the Finance Committee of the Senate. Thereafter, in conference, the definition of "back pay" was broadened to the definition enacted, with the explanation in the report of the Committee of Conference that "The term [back pay] refers only to remuneration, the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition." * * *

It seems to us that the $15,000 which Stearns received on December 21, 1945, in the compromise settlement of his suit against Columbia was not received as "remuneration" for prior services rendered to Columbia "the payment of which has been deferred by reason of the unusual circumstances of the type specified in the definition," as described by the conference committee in its report.

Therefore, when all the facts in the instant case are considered and consideration is given as to whether the $10,000 here in question falls within the definition of "back pay" as defined by Congress, we think the answer must be in the negative. We so hold.

Reviewed by the Court.

*Decision will be entered that there is a deficiency in income tax of $2,459.67 and there is no penalty for "substantial underestimation of estimated tax."*

---

DISNEY, *J.*, dissenting: I agree with Judge Opper's dissent, but in addition it seems to me that the $10,000 which petitioner received comes well within the definition of back pay; that is, that it is "remuneration * * * and other similar compensation * * * for

services performed  *  *  *  ." The definition in section 107(d) (2) provides that such remuneration for services performed includes those which would have been paid prior to the taxable year except for the intervention, *inter alia*, of dispute as to liability to pay such remuneration, which is determined after the commencement of court proceedings. It seems to me that this language very reasonably was intended to include a situation where, being discharged, an employee sued for breach of contract and recovered, by judgment or by compromise. Indeed such discharge and, therefore, suit for breach of contract seems the usual situation which would entail the delay in payment and commencement of court proceedings, described in the statute; for, if the employee had actually rendered the services, it would appear unlikely that there could be any "dispute as to liability," so that discharge and suit for breach of contract seems the situation probably intended to be covered by the statute. The majority opinion seems to be based upon the idea that the amount is, because received in settlement of a suit for breach of contract, not remuneration *"for services performed."* But Webster's New International Dictionary defines "remuneration" as "To pay an equivalent for (any service, loss, expense or other sacrifice) or to pay an equivalent to (one) for such services, etc.; to recompense; requite; compensate; pay; as, to remunerate men for labor  *  *  *." To me this case presents a clear example of paying "an equivalent" for service. Such equivalency seems to be a basis of the suit for breach of contract, for certainly the petitioner therein sought the equivalent of what he would have received. Therefore, it seems to me that to take the view that the $10,000 was remuneration not for services performed, but for damages, is to restrict the statute much within its reasonable intendment. I, therefore, dissent.

OPPER, *J.*, dissenting: In *Norbert J. Kenny*, 4 T. C. 750, we regarded an R. F. C. loan as "similar" to the delaying events expressly described in section 107(d) (2) (A) (i)-(iii). Damages for failure to pay salary for services rendered seem to me at least similar to the salary itself, particularly where any failure to render the services was due to the apparently wrongful refusal of the employer to continue the relationship. In *Norbert J. Kenny*, *supra*, we did not require exact compliance with the definition under the provision referring to "any other event determined to be similar in nature." Here the language is, "including wages, salaries, retirement pay, and other *similar* compensation." (Emphasis added.) I think we should consider these damages likewise as "similar compensation" and apply the back pay provision.

DISNEY, *J.*, agrees with this dissent.