Rockingham
No. 81-170

HAROLD WHITEHOUSE *& a.*

v.

DORA RYTMAN *& a.*

September 8, 1982

*Nadeau Professional Offices*, of Rye (*J. P. Nadeau* on the brief and orally), for the plaintiffs.

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth (*Branch S. Sanders* on the brief and orally), for the defendants.

PER CURIAM. This is an action brought by the purchaser of a chicken farm for damages allegedly suffered as the result of the defendant seller's breach of a related agreement to supply large numbers of young chickens to the plaintiffs.

After a trial before the Master (*Robert L. Cullinane*, Esq.), the Superior Court (*Contas*, J.) approved his ruling that, although the defendant Julius Rytman breached his contractual obligation to deliver chickens to the plaintiffs, the plaintiffs could recover only nominal damages because they had failed to present any evidence from which he could find with reasonable certainty that they had actually suffered damages. The only issue of substance on this appeal is whether the master was correct in denying more than nominal damages to the plaintiffs.

On August 23, 1972, the parties entered into a written agreement in which the defendant Dora Rytman was to sell a chicken farm in Brentwood, New Hampshire, to the plaintiffs, Harold and Phyllis Whitehouse. As part of the consideration, the defendant Julius Rytman (hereinafter referred to as the defendant) agreed to continue his then existing chicken-raising contract with the plaintiffs. Before the plaintiffs purchased the farm, the parties had orally agreed that the defendant would deliver young chickens to the plaintiffs. Under the oral agreement, the plaintiffs were to raise and care for the chickens, and the defendants were to collect and sell the chickens when they were full-grown. Under the written chicken-raising contract which was an integral part of the agreement to purchase the chicken farm in August 1972, the defendant agreed to provide the plaintiffs with at least 50,000 chickens per year and make delivery for at least forty-two weeks per year. The plaintiffs were to pay certain operating costs of the chicken farm, amounting to approximately $2,000 per year and including insurance, taxes, and maintenance. The defendant assumed responsibility for other expenditures such as grain, inoculation of the chickens, and heating of the chicken coops. The plaintiffs, who expected to be paid according to chicken market prices at the time they performed under the contract, agreed to pay a certain percentage of their proceeds to Dora Rytman, in order to discharge their mortgage obligation to her. Both parties understood that their mutual obligations would remain effective until the plaintiffs had paid in full their mortgage debt to Dora Rytman.

At the time of the sale, there were three chicken coops on the farm: a large coop which the plaintiffs had insulated and substantially improved; and two smaller coops in relatively poorer condition. Within a week of the sale, the defendant delivered a flock of chickens sufficient to fill the large chicken coop. Subsequently, in October 1972, a fire destroyed the large chicken coop. Notwithstanding the plaintiffs' numerous requests to the defendant that he deliver chickens to be raised in the remaining coops, the defendant did not deliver additional chickens until February 1973. That delivery was the last one made to the plaintiffs.

For three years the plaintiffs made repeated requests to the defendant that he perform his contractual obligations, but they received no response from him. The plaintiffs nevertheless remained confident that the defendant would eventually perform, and they continued to make their mortgage payments on the Brentwood farm until August 1976, when it became apparent that the defendant would not deliver any more chickens to the plaintiffs.

Consequently, the plaintiffs commenced an action against the

defendant for breach of the contract. At trial, the plaintiffs' claim for benefit-of-the-bargain damages resulting from the breach was denied even though the court held that the defendant had breached his contract without justification. On this appeal, the plaintiffs contest the trial court's denial of damages, and its refusal to rule on certain of their requests for findings of fact.

■■ In reviewing damage awards, this court will view the evidence in the light most favorable to the prevailing party. *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 124, 441 A.2d 1167, 1170 (1982); *M. W. Goodell Const. Co., Inc. v. Monadnock Skating Club, Inc.*, 121 N.H. 320, 323, 429 A.2d 329, 331 (1981). One who seeks to recover damages has the burden of proving the extent and amount of such damages. *Hangar One, Inc. v. Davis Assoc's, Inc.*, 121 N.H. 586, 590, 431 A.2d 792, 795 (1981).

Here the plaintiffs seek damages for prospective lost earnings. The only evidence presented by the plaintiffs in support of their claim was their own testimony that, had the defendant continued to deliver chickens according to his contractual obligation, the plaintiffs would have received an income of at least $7,650 per year from the two small chicken coops, that they would have been able to pay their mortgage debt off in twelve years and that they would have retained at least $69,000 net income after payment of their mortgage debt and their operating expenses. The plaintiffs' calculation of profits was based solely on their opinion that the market price of chickens would remain unchanged. They failed to rebut the testimony of several witnesses who testified concerning the variables and uncertainties in the chicken-raising business. Moreover, one of the plaintiffs himself testified that because of an existing depression in the chicken-raising market, he had not attempted to start a chicken-raising business on his own.

■ Although we do not require that prospective lost profits be proven with absolute certainty, we do require that plaintiffs produce sufficient evidence to demonstrate that profits are reasonably certain to result. *Dunlop v. Daigle*, 122 N.H. 295, 300, 444 A.2d 519, 522 (1982); *see Petrie-Clemons v. Butterfield*, 122 N.H. at 125, 441 A.2d at 1171. Based on the evidence presented at trial, we conclude that the trial court properly ruled that the plaintiffs had failed to sustain their burden of proving their alleged lost profits. *See Progressive Survey, Inc. v. Pearson*, 120 N.H. 58, 60–61, 410 A.2d 1123, 1125 (1980). The evidence presented at trial, however, if believed, would be legally sufficient to indicate that the plaintiffs suffered damages other than lost profits as a result of the defendants' unjustified breach of contract. Because the master

apparently failed to consider these alleged damages, the case is remanded in order that the master may consider whether the plaintiffs are entitled to more than nominal damages.

■ The plaintiffs' contention that the master erroneously failed to rule on all of their requests for findings of fact is without merit. A master need only make findings, in narrative form, of the essential facts which are sufficient to support his decision. *Heinze v. Heinze*, 122 N.H. 358, 362, 444 A.2d 559, 562 (1982).

*Remanded.*